No. 26-5123

---

In the

# United States Court of Appeals

for the Ninth Circuit

---

VALVE CORPORATION,

*Petitioner,*

v.

USERS OF VALVE'S VIDEO GAME PLATFORM, STEAM,

*Respondents.*

---

On Petition for Permission to Appeal an Order from the United States District Court for the Western District of Washington
No. 2:24-cv-01717-JNW, Hon. Jamal N. Whitehead

---

## ANSWER TO PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)

---

William Ward Bucher IV
BUCHER LAW PLLC
1000 Brickell Ave
Suite 715
Miami, FL 33131
T: 202.997.3029
E: will@bucherlaw.com

William R. Burnside
BAILEY DUQUETTE P.C.
800 Fifth Avenue
Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

STATEMENT OF THE CASE .......... 3

ARGUMENT .......... 9

- I. Valve's recreational-activity question is not within the four corners of the certified order. .......... 12
- II. Valve's proposed questions are not controlling questions of law. .......... 13
- III. Valve has not shown a substantial ground for difference of opinion. .......... 19
- IV. The proposed appeal would not materially advance the ultimate termination of this litigation. .......... 25

CONCLUSION .......... 31

CERTIFICATE OF COMPLIANCE .......... 32

CERTIFICATE OF SERVICE .......... 33

# TABLE OF AUTHORITIES

## Cases

*Adler v. Fred Lind Manor*,
153 Wn.2d 331 (2004) .......... 15

*Bassett v. Electronic Arts Inc.*,
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) .......... 25

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) .......... 10

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) .......... *passim*

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) .......... *passim*

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) .......... *passim*

*In re iPhone Application Litigation*,
2011 WL 4403963 (N.D. Cal. Sep. 20, 2011) .......... 25

*Ireland-Gordy v. Tile, Inc.,*
2026 WL 594859 (9th Cir. Mar. 3, 2026) .......... 23

*James v. Price Stern Sloan, Inc.*,
283 F.3d 1064 (9th Cir. 2002) .......... 9, 10

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) .......... 11

*Torgerson v. One Lincoln Tower, LLC*,
166 Wn.2d 510 (2009) .......... 15

*United States Rubber Co. v. Wright*,
359 F.2d 784 (9th Cir. 1966) .......... 12, 26, 28

*United States v. Woodbury*,
263 F.2d 784 (9th Cir. 1959) .......... 10

*Wolfire Games, LLC v. Valve Corp.*,
No. 2:21-cv-00563-JCC, 2021 WL 4952220,
(W.D. Wash. Oct. 25, 2021) .......... 4

*Yamaha Motor Corp. v. Calhoun*,
516 U.S. 199 (1996) .......... 11

**Statutes**

28 U.S.C. § 1292(b) .......... *passim*

# INTRODUCTION

Interlocutory review under § 1292(b) turns on consequence, debate, and efficiency. Valve's petition offers none of the three.

Consider consequence. Valve's motion for preliminary relief failed all four parts of the four-part test for granting a preliminary injunction. Its petition seeking interlocutory review challenges only one. Thus, even reversal on the merits would not change the result: three other independent grounds support the denial of preliminary relief. Interlocutory review is therefore of no consequence to the order Valve seeks to appeal, much less the outcome of the litigation as § 1292(b) requires.

Then consider debate. Valve is not even sure what the legal debate is about. It asked the district court to certify one question for review; yet its petition now presents two. Moreover, the district court did not decide the first question as Valve now frames it, and Valve identifies no competing legal rule on either question—as it must to obtain interlocutory review. Instead, Valve is asking this appellate court to reverse the district court's application of settled law to the particular facts of this case. That is not the purpose of interlocutory appeal.

Now consider efficiency. A dispositive ruling on the same underlying issue is already pending in the district court. Granting interlocutory review would postpone that merits determination so this Court could review a preliminary equitable ruling instead. That does not advance the litigation. It delays a dispositive—and appealable—decision that could end it. Interlocutory review is inefficient.

That leaves another question: Why is this Court being asked to delay a dispositive ruling to consider an application of no consequence?

The answer begins with the bargain Valve originally wrote. Valve contractually barred class proceedings and required every consumer claim to proceed through individual arbitration. For years, few did. Then thousands of consumer claimaints invoked the provision. What had prevented aggregation now required Valve to defend thousands of individual proceedings—and bear the arbitral costs it had agreed to pay.

Valve responded by rewriting the bargain. Its new agreement eliminated both individual arbitration and the class-action waiver and directed disputes to court instead. Valve itself says the amendment came in response to an adverse arbitral ruling and the filing of a class action. Valve takes the position its new forum selection clause applies

retroactively to the existing arbitrations. It thus brought this declaratory-judgment action to establish that the new agreement displaced the arbitrations already underway. It also sought a preliminary injunction to stop them.

The district court declined that extraordinary relief. It found the new forum provision likely unenforceable as applied to these consumers because the amendment was both procedurally and substantively unconscionable. Under Washington law, either conclusion is independently sufficient. Valve lost on both.

That is the dispute Valve now seeks to interrupt for interlocutory review. Meanwhile, the district court stands ready to decide the merits. Section 1292(b) was designed to accelerate litigation by resolving consequential legal disputes—not to delay a dispositive ruling so an appellate court can revisit an inconsequential preliminary one.

## STATEMENT OF THE CASE

### A. Valve adopted an arbitration system and enforced it.

In 2012, Valve added an arbitration provision to its consumer agreement. In relevant part, Valve required consumers to resolve disputes through individual arbitration that waived class proceedings.

SA8. For years, this provision effectively shielded Valve from consumer litigation. Valve boasts that only two disputes proceeded to arbitration during the first five years after it adopted the arbitration provision and that Valve prevailed on the merits in both. Dkt. 78 at 21 n.23.

In 2021, seven consumers sued Valve alleging antitrust violations. Valve successfully moved to compel the consumers to arbitrate. *Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220, at *1 (W.D. Wash. Oct. 25, 2021). The court declined to decide whether the arbitration agreement was unconscionable, concluding that the parties had delegated that question to the arbitrator. *Id.* at *2.

Beginning in October 2023, thousands of consumers filed demands for arbitration against Valve. SA9.

**B. Valve amended the SSA while arbitrations were pending.**

On September 26, 2024, while thousands of consumer arbitrations were pending, Valve unilaterally amended the consumer agreement. The new agreement eliminated arbitration and required disputes to proceed exclusively in specified state or federal courts in King County, Washington. SA10–11. Its new forum provision purported to extend to

claims "that arose before the existence of this or any prior agreement." *Id*.

Valve sent notice of the new consumer agreement directly to users of its gaming platform (Steam), including consumers represented by counsel in pending arbitrations against Valve. SA27. Valve contends that some consumers affirmatively accepted the new agreement through a new purchase transaction or similar conduct. SA14–15. For other consumers, Valve asserts that the consumers are bound because they did not delete or discontinue use of their accounts before Valve's unilateral deadline of November 1, 2024. *Id*. After this deadline, Valve contends that consumers have continued to use the platform by simply logging into their Steam account. *Id*.; *see also Valve v. Schaefer*, No. 2:26-cv-01806-JNW (W.D. Wash.) ("*Schaefer*").

After amending the consumer agreement, Valve asked the AAA to close the pending arbitrations for lack of jurisdiction. SA15. The AAA deferred to the individual arbitrators. *Id*. Some arbitrators ruled that the earlier agreement controlled and that Valve's amendment did not displace it. SA16. To date, no arbitrator has ruled that Valve's 2024 amendment was enforceable by Valve.

### C. Valve invokes the prior agreement to enforce awards it wins and disavows it to vacate awards it loses.

Valve originally brought this action in the district court against 624 consumers in ongoing arbitrations seeking to enjoin those arbitrations and force the consumer claimants to bring their claims in Washington courts. As those arbitrations have proceeded to final awards, many consumers have been dismissed from this case. Valve's petition now identifies 358 consumers, all of whom remain in ongoing arbitrations. Pet. 1, 8.

The completed arbitrations have produced mixed results. While those arbitrations remained pending, Valve asked the district court to enjoin them, arguing that it was likely to succeed in showing that the September 2024 amendment displaced the prior agreement and that the consumers had no right to arbitrate. But when an arbitration ends in Valve's favor, Valve seeks to enforce the result. Valve has filed petitions in state court to confirm favorable awards arising from the parties' agreement to arbitrate—the same agreement Valve had asked the federal court to hold no longer authorized those proceedings. *See* Dkts. 54, 98.

When a consumer prevails, Valve takes the opposite position. It seeks to vacate the award on the ground that the prior agreement no longer authorizes arbitration and that there was therefore "no agreement to arbitrate." SA17. Meanwhile, Valve continues participating in the 358 ongoing arbitrations while maintaining that those proceedings are unauthorized and asking the federal courts to stop them.

In other words, Valve's position on enforceability of the update tracks the result of the arbitral process. A favorable award is one Valve asks a state court to confirm; an unfavorable award is one Valve asks a federal court to vacate on the ground that the arbitration is now unauthorized.

### D. The district court denied Valve's request for a preliminary injunction.

Valve sought a preliminary injunction barring consumers from continuing their arbitrations. The district court denied that request.

On the preliminary-injunction record, the court concluded that consumers were likely to establish that the updated agreement was unconscionable as applied to them. SA32. Applying Washington law, the court considered both procedural and substantive unconscionability and

explained that either alone may render a contractual provision unenforceable. *Id*.

The court found a likelihood of both procedural and substantive unconscionability. It concluded that the circumstances surrounding Valve's September 2024 amendment likely established procedural unconscionability as to these consumers and that the amendment's operation on their pending arbitrations likely established substantive unconscionability. SA32. The consumers separately raised waiver and estoppel, but the court expressly did not reach those defenses. SA32–33.

The court also addressed each of the remaining *Winter* factors. It concluded that Valve had not established irreparable harm, that the balance of equities did not favor an injunction, and that the public interest weighed against the requested relief. SA33–36. Each conclusion provided an independent basis for denying preliminary relief.

### E. Valve sought certification of one question, and its petition presents two questions.

After the preliminary injunction was denied, Valve moved under 28 U.S.C. § 1292(b) to certify the order for interlocutory appeal. Valve framed its motion around a single question: whether its September 2024 adoption of new terms was unconscionable as to these consumers. Dkt.

173 at 1. The district court agreed that was a controlling question of law and certified its May 27, 2026 order denying the preliminary injunction. SA5. It also *sua sponte* issued a stay and struck pending motions concerning confirmation and vacatur of arbitral awards, with leave to renote when the stay is lifted. *Id.*

Valve's petition, however, now presents two questions. The first asks whether an agreement is procedurally unconscionable when access to "licensed recreational software" is conditioned on accepting updated terms. Pet. 2. The second asks whether an agreement is substantively unconscionable when it "withdraw[s] consent" to resolve a dispute in a pending forum. *Id.* Neither formulation appears in the district court's certification order.

## ARGUMENT

Section 1292(b) creates a narrow exception to the final-judgment rule. *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). To invoke that exception, the certified order must involve a controlling question of law, substantial ground for difference of opinion must exist as to that question, and an immediate appeal must materially advance

the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). Those requirements are jurisdictional. *ICTSI*, 22 F.4th at 1130.

The district court's certification does not itself entitle Valve to an interlocutory appeal. This Court must independently determine that § 1292(b)'s jurisdictional requirements are satisfied, and the district court's conclusion that they are "is not binding upon this court." *Id.* at 1130–31 (quoting *United States v. Woodbury*, 263 F.2d 784, 786 (9th Cir. 1959). Even if those requirements are met, whether to permit the appeal remains within this Court's discretion. 28 U.S.C. § 1292(b); *ICTSI*, 22 F.4th at 1131. Indeed, the Ninth Circuit has observed that even where the district court certifies an order, this Court "nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *James*, 283 F.3d at 1067 n.6. Section 1292(b) therefore requires more than a district court's view that immediate review would be useful; the petitioner must show the "exceptional circumstances" that justify departing from the ordinary rule of review after final judgment. *ICTSI*, 22 F.4th at 1131 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

Section 1292(b) also limits what may supply the basis for interlocutory review. Once jurisdiction exists, this Court may only address questions within the "four corners" of the certified order. *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996); *ICTSI*, 22 F.4th at 1132–34. A question outside the certified order cannot itself furnish § 1292(b) jurisdiction unless it is material to an order that otherwise satisfies the statute. *ICTSI*, 22 F.4th at 1132–34. Valve therefore cannot obtain interlocutory review by recasting the district court's ruling around a legal question the court did not decide.

These limitations reflect Congress's decision to reserve § 1292(b) for exceptional cases, not simply difficult ones. *In re Cement*, 673 F.2d at 1026. The legislative history provides that interlocutory review should be used only where it may avoid "protracted and expensive litigation," and that a "mere question as to the correctness of the ruling" should not prompt certification. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256–57 (11th Cir. 2004) (quoting 1958 U.S.C.C.A.N. 5255, 5260–61). The Ninth Circuit has expressed the same point more directly: § 1292(b) "was not intended merely to provide review of difficult rulings in hard

cases." *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam).

Valve's petition does not satisfy those limits. Its recreational-activity question is not a question the district court addressed in the certified order. Regardless, neither of its proposed questions satisfies § 1292(b)'s requirements for immediate review. The petition should be denied.

## I. Valve's Recreational-Activity Question Is Not Within the Four Corners of the Certified Order.

The district court's analysis illustrates the mismatch. The court did not address whether consumers lacked a meaningful choice based on the recreational or nonessential nature of video games. Instead, the court examined the circumstances of the update: its adhesive character and the parties' disparity in bargaining power; the ambiguity in Valve's rejection mechanism; the requirement that consumers relinquish their existing Steam libraries without refund or transfer to reject the new terms; and Valve's delivery of the amendment directly to represented consumers with pending arbitrations. SA25–SA29. On those circumstances, the

court concluded that the update was likely procedurally unconscionable as applied to these consumers. SA29.

Valve's petition confirms the disconnect. The subsection arguing that consumers can simply forgo video games cites no page of the certified order. Pet. 22–23. The order itself likewise does not cite or address any of the authorities Valve invokes for that proposition. Thus, the first question Valve asks this Court to decide is not one the district court decided—or even contemplated—in the certified order.

The distinction is dispositive. Valve's proposed question is an abstract proposition beyond the contours of the district court's procedural-unconscionability analysis. A question not addressed within the four corners of the certified order cannot supply § 1292(b) jurisdiction over that order. *ICTSI*, 22 F.4th at 1132–34.

## II. Valve's Proposed Questions Are Not Controlling Questions of Law.

Section 1292(b) does not authorize interlocutory review simply because an order involves a legal issue important to one party. The order must involve a **controlling question of law**—a question whose

resolution "materially affect[s] the outcome of litigation in the district court." *ICTSI*, 22 at 1130 (*quoting In re Cement*, 673 F.2d at 1026).

Valve's proposed questions fail both parts of that requirement. These questions do not isolate a disputed rule of law suitable for interlocutory resolution and instead request this Court review an application of settled Washington law to a new set of facts. And however this Court answers those questions, its answer will not establish that Valve's update is enforceable against any consumer.

### A. Section 1292(b) is not a vehicle for reapplying settled state law to the novel facts of this case.

Valve seeks interlocutory review of an application of settled Washington law. In *ICTSI*, this Court distinguished a legal question about the governing rule from a dispute over whether that rule was satisfied "under the circumstances of this case." 22 F.4th at 1131. The latter was not a question of law appropriate for § 1292(b) review because resolving it required applying the governing standard to the circumstances presented. *Id.* The same is true here.

The parties do not dispute governing standards for procedural or substantive unconscionability under Washington law. Procedural unconscionability concerns whether, considering the circumstances

surrounding the transaction, a party lacked meaningful choice. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 345 (2004). That inquiry considers the manner in which the parties entered the contract, whether each party had a reasonable opportunity to understand its terms, and whether important terms were obscured. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 518–19 (2009). Substantive unconscionability asks whether a challenged provision is one-sided or overly harsh under Washington's established standard. *Adler*, 153 Wn.2d at 344–45. "'Shocking to the conscience,' 'monstrously harsh,' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Id.*

The district court announced no new test for either doctrine. It applied those settled standards to the circumstances of Valve's amendment: Valve obtained a court mandate requiring consumers to arbitrate disputes; these consumers did so; an arbitrator determined that Valve's existing forum-selection clause was unenforceable at each individual consumer's election; and Valve then amended its agreement not only to eliminate that one-sided result going forward, but to apply the new forum-selection clause retroactively to arbitrations already

underway. The dispute is whether those circumstances satisfy Washington's established unconscionability standards. That is the same kind of law-to-circumstances inquiry that *ICTSI* held was not a question of law under § 1292(b). 22 F.4th at 1131.

The district court may have concluded controlling questions were involved because Washington courts describe unconscionability as a question of law. SA3. But that answers a different question. Washington's characterization of unconscionability as an issue for the court to decide does not transform every ***application*** of its settled standards into an abstract question of law for purposes of interlocutory review under § 1292(b). *ICTSI* itself looked past the formulation of the certified question and examined what the appellate court was asked to review. There, the dispute over whether ICTSI had become a primary employer "under the circumstances of this case" was not a question of law simply because the parties framed the issue in legal terms. 22 F.4th at 1131.

So too here. Valve identifies no unsettled component of Washington's unconscionability doctrine for this Court to resolve. It asks this Court to decide whether, on these facts, the district court reached

the right answer when it concluded that Valve was unlikely to be able to enforce its new terms against consumers whose arbitrations were already underway. That is ordinary appellate review of the application of settled law—not the exceptional interlocutory review § 1292(b) permits.

### B. Valve's proposed questions do not resolve the order it seeks to appeal.

Valve's questions independently fail because their resolution would not control the litigation's outcome. Section 1292(b) requires a question whose resolution could "materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. That requirement is distinct from whether interlocutory review might shorten proceedings or conserve judicial resources. *Id.* at 1026–27.

Here, a complete victory for Valve on both proposed questions would not even control the disposition of the very order under review. The district court denied preliminary relief because Valve failed to satisfy each of the *Winter* requirements. After concluding that Valve had not shown a likelihood of success, the court explained that it need not reach the remaining factors—but did so anyway because "each points the same way." SA33–37. It found Valve suffers no irreparable harm in litigating claims it compelled to arbitration. SA34. The court also found that both

the balance of equities and the public interest favored the consumers. SA34–37. Reversing the district court's unconscionability analysis would therefore resolve only the likelihood-of-success factor, leaving undisturbed the district court's independent grounds for denying preliminary relief.

That is the difference between affecting litigation and controlling its outcome. Most interlocutory rulings affect what happens next. Section 1292(b) demands more. *In re Cement*, 673 F.2d at 1026. Valve seeks immediate appellate review of one ground underlying an order supported by three other grounds beyond the reach of Valve's proposed questions. Whatever effect an appellate ruling on unconscionability might have on the litigation, it will not change the disposition of an order independently supported on grounds outside the proposed questions.

In short, Valve identifies no question for appeal that controls the outcome of this litigation. The Court should therefore deny Valve's petition for failure to satisfy § 1292(b)'s controlling-question requirement.

## III. Valve Has Not Shown a Substantial Ground for Difference of Opinion.

Valve attempts to turn extraordinary facts of its own making into uncertainty under Washington law. But a substantial ground for disagreement turns on the "extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). A party's "strong disagreement" with the district court is insufficient, and "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.* Nor is it enough that no court has confronted the precise facts before. "[J]ust because a court is the first to rule on a particular question" does not warrant interlocutory review, and a "dearth of cases" does not establish substantial disagreement. *Id.* at 633–34.

Those principles describe Valve's petition. Valve identifies no competing Washington standard for procedural or substantive unconscionability. Instead, it invokes the same standards the district court applied and relies largely on unpublished and out-of-state authorities that do not conflict with what the district court decided.

### A. Valve never identifies the substantial ground for debate.

Valve's shifting description of the supposed controlling question exposes a fundamental problem with its petition: Valve never identifies

an unsettled rule of law for this Court to resolve. In the district court, Valve sought certification based on a single question—whether its September 2024 amendment was unconscionable and therefore unenforceable as to these consumers. Dkt. 173 at 1. The district court certified its order, but it did not identify any disputed Washington standard governing unconscionability. SA3–5. And the parties agree on those standards. Yet Valve arrives in this Court with two newly formulated questions, one procedural and one substantive. Pet. 2.

The reason for that division is apparent: Washington law treats either procedural or substantive unconscionability as independently sufficient, and the district court found both. SA32. Valve therefore must overturn both conclusions to disturb the district court's likelihood-of-success ruling. But dividing those adverse conclusions into two questions does not identify two unsettled rules of law—or even one. At every stage, the governing Washington standards remain the same; what changes is Valve's formulation of the applications it wants reviewed. That is the distinction *Couch* draws: "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." 611 F.3d at 633.

### B. Valve has not shown substantial disagreement with the district court's application of Washington's procedural-unconscionability standard.

The district court applied Washington's settled meaningful-choice inquiry and concluded that, "[t]aken together," the circumstances surrounding Valve's 2024 amendment likely left these consumers with no meaningful choice. SA25–29. Valve identifies no Washington authority disagreeing with that application of the governing standard. It also fails to identify any Washington authority the district court relied on to articulate an incorrect legal standard.

Instead, Valve relies on cases arising from materially different circumstances. Those cases do not address Valve's expansive theory that even logging into a Steam account constitutes continued use and assent. Nor do they address the choice Valve imposed on existing customers: accept the new terms or forfeit access to thousands of dollars in previously purchased content. Valve therefore identifies no authority showing substantial disagreement with the district court's application of Washington law to these circumstances. Under *Couch*, that is insufficient to satisfy § 1292(b). 611 F.3d at 633.

**1.** Valve contends that anything short of deleting or discontinuing use of a Steam account by its unilaterally imposed deadline constituted acceptance of the new agreement. The district court understood Valve's theory the same way: to preserve the prior agreement, a consumer had to stop using the account and "never use it again," because "any login after November 1, 2024, counted as acceptance." SA26–27.

Valve's position in a pending petition to vacate an arbitration award makes the point even clearer. *See Schaefer*. There, Mr. Schaefer logged into his Steam account on December 3, 2025, more than a year after Valve imposed the 2024 amendment and deadline. Valve treats that single login as "continued use of Steam" sufficient to manifest assent to the updated forum-selection clause. Valve identifies no purchase, Wallet funding, key redemption, game launch, acceptance click, or other post-login activity. Under Valve's theory of mutual assent, a single login is enough.

That is a conception of "continued use" that extends far beyond continuing to play video games. A consumer might log in to change a password, check account information, retrieve purchase records, review a Steam Wallet balance, gather evidence for an ongoing arbitration, or

even prepare to close the account. Valve's litigation theory treats each of those acts as assent to a new agreement that displaces the consumer's pending arbitration.

This factual distinction matters to the substantial-ground inquiry. Valve relies on decisions involving consumers who continued using recreational products or services. *See, e.g., Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026) (users "unambiguously manifested assent" to updated terms "through their continued use of the Tile App"). But under Valve's own theory, continued recreational use is unnecessary: mere access to the account suffices. *See Schaefer*. Valve's authorities therefore rest on a materially different factual premise. Under *Couch*, cases addressing the voluntary continuation of recreational activity do not establish substantial disagreement with the district court's application of settled law to these circumstances. 611 F.3d at 633.

**2.** Valve's recreational-activity framing also ignores the parties' continuing relationship and the accept-or-lose everything choice. These consumers were not prospective customers deciding whether to accept a company's onerous terms before buying a product. They had already

purchased their Steam libraries. They had already accepted Valve's arbitration requirement. And many had already relied on that agreement by retaining counsel and commencing arbitration.

Valve nevertheless characterizes the choice as if consumers could simply stop playing video games. Pet. 22–23. But rejecting the amendment required them to abandon access to their Steam accounts—and therefore to the games, licenses, entitlements, and other account benefits tied to those accounts. The district court found that the games alone were worth an average of more than $3,000, with no refund or transfer of the licenses. SA26. The district court thus found that "[a] consumer could keep the benefit of her purchases or keep the right to arbitrate, but not both." SA27.

The relevant circumstance was therefore not whether consumers could live without playing video games. It was that preserving their existing arbitration rights required them to abandon access to the consumer's previously purchased content.

Valve identifies no authority addressing that choice. Its recreational-use cases involve materially different bargains. *In re iPhone Application Litigation* involved downloading free or trivially priced

applications, with consumers having alternatives to the devices at issue. 2011 WL 4403963, at *8 (N.D. Cal. Sep. 20, 2011). *Bassett v. Electronic Arts Inc.* involved an optional online feature that only some consumers chose to activate. 2015 WL 1298644, at *5, *9 (E.D.N.Y. Feb. 9, 2015). Walking away in those cases meant declining to begin or continue an optional recreational activity. Neither required consumers to surrender an accumulated, paid-for library to preserve a dispute-resolution right they had already invoked.

That distinction matters under *Couch*. Different applications of settled law to materially different facts do not create a substantial ground for difference of opinion. 611 F.3d at 633. Valve's authorities do not conflict with the district court's ruling because none addresses the choice presented here: accept Valve's new forum clause or lose access to the Steam account and everything already tied to it.

## IV. The proposed appeal would not materially advance the ultimate termination of this litigation.

Valve overstates why an interlocutory appeal would be beneficial to the parties. Section 1292(b) asks whether immediate review "may materially advance the ultimate termination of the litigation." In the Ninth Circuit, that requirement is satisfied when resolution of the

certified question "may appreciably shorten the time, effort, or expense of conducting" the district-court proceedings. *ICTSI*, 22 F.4th at 1130–31 (quoting *In re Cement*, 673 F.2d at 1027).

*United States Rubber* explains the reason for that requirement: Congress reserved § 1292(b) for "extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation," not ordinary cases that "could otherwise be promptly disposed of." 359 F.2d at 785, n.2. Indeed, the Ninth Circuit dismissed the interlocutory appeal after concluding that "no disposition we might make of this appeal on its merits could materially affect the course of the litigation in the district court." *Id.*

Nothing here meets those demanding efficiency standards. Valve's assertion that review would "effectively decide the case" depends on treating one defense to enforcement as dispositive of enforceability. Pet. 18. And denying review would not require the parties to embark on a lengthy trial, burdensome discovery, or other protracted proceedings. It would permit the district court to resume consideration of fully briefed dispositive motions already before it. Not only do those motions decide whether arbitrations may continue, they decide whether final awards

may be affirmed. Immediate review therefore would not eliminate protracted litigation; it would interrupt ordinary district-court proceedings that are positioned to resume once the stay is lifted.

**A. Valve's main efficiency argument rests on a faulty premise**

Valve argues that reversing the district court's ruling that the update is likely unconscionable equates to a ruling that the new forum-selection clause is enforceable. Pet. at 18 (explaining that enforceability "hinges" on unconscionability). It does not. Unconscionability is only one of the consumers' challenges to enforcement. So even if this Court resolved the certified unconscionability questions entirely in Valve's favor, that would establish only that one defense to enforcement is unlikely to succeed—not that the clause is enforceable against every consumer Valve included in this matter.

The district court recognized that distinction. After addressing unconscionability, it expressly preserved the consumers' remaining defenses: "[n]othing in this Order forecloses Defendants from pressing these arguments as the case proceeds." SA32–33. Valve therefore cannot leap from a preliminary finding of "likely unconscionable" to a final judgment of "enforceable" without the district court first resolving those

separate defenses. That breaks the premise underlying Valve's assertion that appellate review would "effectively decide the case." Pet. 18.

More importantly, a ruling for Valve on unconscionability would not entitle it to the preliminary relief that produced this interlocutory appeal. As set forth above, the district court separately considered the remaining *Winter* factors and concluded that each favored the consumers. SA33. Far from "effectively decid[ing] the case," Pet. 18, resolving the certified unconscionability questions would not even resolve the motion that produced the certified order. That is not efficiency, it is unnecessary delay.

**B. Interlocutory review would delay, not accelerate, pending merits determinations.**

*United States Rubber* draws the relevant line. Section 1292(b) is reserved for extraordinary cases in which immediate review may avoid "protracted and expensive litigation," not "ordinary litigation which could otherwise be promptly disposed of." 359 F.2d at 785, n.2. The Ninth Circuit therefore rejected interlocutory review where "no disposition" of the appeal could "materially affect the course of the litigation in the district court." *Id.* That principle fits this case because the district court is already positioned to address the merits through ordinary proceedings.

The consumers' fully briefed motion to dismiss remains pending, and the stay lasts only until this Court decides whether to accept Valve's petition. SA5. Once that stay lifts, the district court can resume consideration of that dispositive motion without awaiting discovery, trial, or any other protracted proceeding. In other words, the ordinary course of this case already presents a path to a final merits determination. Interlocutory review would interrupt that path so this Court could first review a preliminary determination of unconscionability.

That is the opposite of the efficiency § 1292(b) requires. Granting review would postpone a pending merits decision in order to obtain appellate review of a preliminary one, after which the case would still return to the district court for further adjudication. Valve identifies no lengthy trial, burdensome discovery, or comparable proceeding that this detour would avoid. Because immediate review would delay rather than materially accelerate the district court's merits determination, Valve has not satisfied § 1292(b)'s materially-advance requirement.

### C. Interlocutory review would prolong the very delay the district court found inequitable.

Interlocutory review would also create inefficiency outside the district court by further delaying the consumers' pending arbitrations.

These are not newly filed proceedings waiting to begin. Consumers filed their arbitrations beginning in 2023, and many have already spent years pursuing claims in the forum Valve required them to use. By the time the district court considered Valve's preliminary-injunction motion, some consumers had prevailed on liability or completed merits hearings, and arbitrators had begun entering awards in their favor. SA34. The district court therefore found that stopping those proceedings "would fall hard" on the consumers and could "push hard-won claims toward expiration." SA34–35. Against those harms, Valve identified only the time and expense of continuing in "the forum it chose." SA33–35.

Accepting interlocutory review would prolong that same delay. Valve asked the district court to enjoin these arbitrations, but the court denied relief after concluding that Valve failed to satisfy any of the *Winter* factors. SA33–37. Yet while this appeal proceeds, the consumers would continue to be prevented from completing arbitrations that have already been pending for years. In practical effect, Valve would continue receiving part of the benefit it sought through a preliminary injunction even though the district court concluded that the equities did not justify one.

That result is neither efficient nor equitable. The district court found no irreparable harm to Valve from allowing the arbitrations to proceed, while finding concrete prejudice to consumers from further delay and concluding that "[t]he public interest lies in finality." SA33–36. Extending that delay through interlocutory review would impose additional prejudice on the consumers without materially advancing the termination of this case. That does not satisfy § 1292(b)'s efficiency requirement.

## CONCLUSION

For the foregoing reasons, the Court should deny Valve's petition for permission to appeal.

Dated: August 20, 2026

Respectfully submitted,

/s/ *William R. Burnside*
William R. Burnside

*Counsel for Respondents*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this answer complies with the length limits of Ninth Circuit Rules 5-2(b) and 32-3(2) because it contains 5,578 words, excluding the parts exempted by Federal Rules of Appellate Procedure 5(c) and 32(f). This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this answer.

I further certify that this answer complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: August 20, 2026

Respectfully submitted,

/s/ *William R. Burnside*
William R. Burnside

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. All participants in the case are registered ACMS users and will be served by the ACMS system.

Dated: August 20, 2026

Respectfully submitted,

/s/ *William R. Burnside*
William R. Burnside